UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **TUANO MICHAEL JOHNSON**, <br><br> Defendant. | Case No. 1:25-cr-262 (TNM) |

**MEMORANDUM ORDER**

Tuano Johnson is charged with unlawfully possessing a firearm as a convicted felon. Johnson moves to suppress the firearm that led to his arrest for that crime. He argues that because a U.S. Capitol Police officer violated department procedures while searching his car, he conducted an unreasonable search in violation of the Fourth Amendment. Johnson claims that, as a result, the fruit of that search—the firearm—must be suppressed. Because no violation of the Capitol Police policy occurred, the Court denies Johnson's motion.

**I.**

Based on the testimony presented at a motion hearing and the record evidence, the Court makes these findings of fact.

One August afternoon in 2025, U.S. Capitol Police Officer Seth Carll observed a vehicle with expired temporary tags drive by him on Constitution Avenue in Washington, D.C. *See* Body Worn Camera (BWC) at 1:40–1:58, ECF No. 28, Ex. 1; Hr'g Tr. at 24:23–24:24. He followed the car and activated his cruiser's emergency equipment, prompting the car to stop. *See* BWC at 00:29–1:23. Officer Carll approached the car and asked the driver—Johnson—for his license, registration, and insurance. *Id.* at 1:58–2:25. Johnson was alone in the car. *Id.*

Johnson explained that he bought the car two weeks earlier with the expired tags already affixed. *Id.* at 2:36–2:56. He gave Officer Carll a Maryland learner's permit but had no driver's license, proof of registration, or insurance. *Id.* at 3:15–4:01. As Johnson told Officer Carll, he had not yet registered the vehicle. *Id.* at 3:10–3:15, 4:00–4:12. Officer Carll also asked Johnson about his recent arrests, and Johnson offered that he was on probation for armed robbery. *Id.* at 4:37–4:50. Officer Carll followed that initial conversation with a license and registration check, which confirmed both Johnson's learner's permit and his active probation. *Id.* at 5:50–6:52, 8:50–8:58. He also ran the car's VIN number, revealing that it was not registered in the District, Maryland, or Virginia. *Id.* at 9:48–10:29. Equipped with that information, Officer Carll ordered a tow truck to take the car. *Id.* at 6:30–6:42.

Officer Carll then asked Johnson to exit his car. *Id.* at 16:07–16:11. When Johnson hesitated, Officer Carll assured Johnson that he was not under arrest, but because the vehicle lacked proper registration, Officer Carll wanted to speak with him. *Id.* at 16:10–16:16. Johnson complied. *Id.* at 16:25–16:30. Officer Carll explained that after buying a car, the owner must obtain a temporary tag and registration in his home state. *Id.* at 16:50–17:05. He added that by driving with a learner's permit and without a licensed driver, Johnson committed a misdemeanor offense, though, Officer Carll repeated, he would not be arrested. *Id.* at 17:04–17:20.

But because Johnson had no licensed driver with him and his car blocked the roadway, Officer Carll asserted that he would "impound[]" the vehicle by having it towed to a private lot, where Johnson could later pick it up with someone who could legally drive the car. *Id.* at 17:18–17:32. Before doing so, Officer Carll elaborated, he would "inventory" the car and then allow Johnson to retrieve his belongings from it. *Id.* at 17:20–17:25. At no point during that

2

conversation did Johnson suggest that he would like to accompany the vehicle or arrange for someone else to do. *See id.* at 16:50–17:40. Nor did Officer Carll invite him to do so.

Matters took a turn when Officer Carll began his inventory search. *Id.* at 19:40–20:08. When he got to the glove compartment, he discovered a black and silver pistol. *Id.* at 21:28–21:38. Immediately, he arrested Johnson. *Id.* at 22:12–22:20.

Later that month, the Government filed a criminal complaint against Johnson, charging him with unlawful possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Criminal Complaint at 1, ECF No. 1. A grand jury returned an indictment on that charge. Indictment at 1–2, ECF No. 13. Johnson moves to suppress the firearm discovered in the inventory search. Mot. to Suppress, ECF No. 19. The parties submitted briefs presenting their arguments, which they summarized at a motions hearing. *See* Minute Entry, December 12, 2025. During the hearing, Officer Carll and Lieutenant William Johnson testified for the Government. *See* Hr'g. Tr. at 5:08–5:20, 21:05–21:19. As detailed below, Officer Carll explained his reasons for having Johnson's vehicle towed. *See id.* at 24:23–28:14. The lieutenant explained his understanding of the department's policy on impounding vehicles. *See id.* at 6:21–13:04.[1] Johnson also testified to explain that had Officer Carll offered him the chance to accompany his vehicle on the tow before beginning the inventory search, Johnson would have done so. *See id.* at 35:10–36:09.[2]

---

[1] The Court credits both Officer Carll's and Lieutenant Johnson's testimony. Based on their demeanor, length of service, and after carefully considering their statements, the Court finds both Officer Carll and Lieutenant Johnson credible.

[2] The Court credits this testimony and believes that Johnson would have gone with the tow truck had he been offered the opportunity.

3

## II.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To enter private property, officers customarily must obtain a valid warrant to ensure that any search and seizure is not "unreasonable." *Caniglia v. Strom*, 593 U.S. 194, 198 (2021).

The Supreme Court has significantly curtailed the warrant requirement for vehicles. This automobile exception recognizes that obtaining a warrant to search a peripatetic object like a car will often be impractical. Officers may stop a vehicle without a warrant if they have reasonable suspicion to believe the driver violated the law. *United States v. Hensley*, 469 U.S. 221, 226 (1985). They may search an automobile without a warrant if they have probable cause to believe it contains evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 153–54 (1925). And— as relevant here—they may conduct an inventory search of "impounded" vehicles without a warrant "where the process is aimed at securing or protecting the car and its contents." *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976). These inventories aim not to search for criminal evidence, but "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). Or at least that is the rationale.

Inventory searches come with limits. To ensure they are reasonable under the Fourth Amendment, inventory searches must follow standard procedure, if one exists. *See United States v. Proctor*, 489 F.3d 1348, 1355 (D.C. Cir. 2007); *Bertine*, 479 U.S. at 374 n.6 ("Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria."); *Opperman*, 428 U.S. at 372 ("The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police

procedures are reasonable."). Adherence to a police department's standard procedure "ensures that an inventory search is not . . . a ruse for a general rummaging in order to discover incriminating evidence." *Proctor*, 489 F.3d at 1355 (cleaned up).

### III.

This motion comes down to the following issue: Did Officer Carll violate Capitol Police policy—and thus the Fourth Amendment's reasonable search requirement—by conducting an inventory search of Johnson's car?

Capitol Police policy shows the way. It instructs that "[w]henever it is necessary for a vehicle to be towed, removed, impounded, or stored, the sworn employee directing that the action be taken . . . will inspect and inventory the vehicle and its contents." U.S. Capitol Police Standard Operating Procedure ("Policy") at 14, ECF No. 24.[3]

The policy then outlines four exceptions when no inventory should take place. Officers should not conduct an inventory: (1) "When a vehicle is disabled, either by mechanical failure or as a result of damage resulting from a motor vehicle accident, and the owner and/or operator is present and makes satisfactory arrangements to have the vehicle removed by someone other than the Department's on-call tow company"; (2) "When a vehicle is towed by a private tow contractor and the owner or operator accompanies the tow"; (3) "When a vehicle . . . does not impede traffic flow and/or is not illegally parked"; and (4) "When a vehicle is relocated for traffic reasons." *Id.*

Under those guidelines, no violation occurred here. Officer Carll impounded the car for legitimate reasons, and policy required him to inventory the car after making that decision. As Officer Carll testified, several factors governed his decision to impound the vehicle. Hr'g. Tr. at

---

[3] All page citations refer to the page numbers that the CM/ECF system generates.

26:19.  He considered whether the car had proper registration tags and whether its driver had insurance and a valid driver's license.  *Id.* at 26:19–27:7.  He also considered parking in the immediate vicinity and the car's potential to impede traffic.  *Id.* at 27:3–27:7.  Because Johnson lacked registration, insurance, and a license, and because the car sat in a traffic lane without available parking nearby, Officer Carll "decided to impound the car."  *Id.* at 27:8–27:19.  He told Johnson as much during the stop, when he stated that he planned to have the car "impounded" because Johnson was "not allowed to drive this car" and needed to "have a licensed driver with [him]."  BWC at 17:10–17:20.

That decision triggered Officer Carll's obligation to conduct an inventory search.  Policy at 14 ("Whenever it is necessary for a vehicle to be towed" or "impounded . . . the sworn employee directing that the action be taken . . . will inspect and inventory the vehicle and its contents.").  Even Johnson concedes that if a vehicle is "impounded, it would have to be searched pursuant to the inventory policy."  Def's Reply at 1.

None of the four exceptions to the inventory-search requirement applied either.  Neither mechanical failure nor an accident prompted the tow (exception 1).  Policy at 14.  And Johnson did not accompany the car as it was towed (exception 2).  *Id.*  More, the vehicle sat on a main road in the way of traffic (exception 3).  *Id.*  And last, Officer Carll moved the vehicle because Johnson could not legally drive it, not for traffic reasons (exception 4).  *Id.*  Because Officer Carll followed departmental policy in conducting an inventory search, he conducted a constitutionally reasonable search.  *Opperman*, 428 U.S. at 372.

Johnson's contrary arguments fall short.  He argues that Officer Carll never impounded the car because he used a private tow company that took the car to a private lot, not to a government facility.  To support his position, he emphasizes that the policy defines

6

impoundment as taking a vehicle "into the custody of the law." Policy at 14. But even with that definition in mind, impoundments do not require government-owned tow trucks or parking lots. The U.S. Capitol Police Department, after all, "does not have a facility in which [it] can store those vehicles for the period of time that might be required." Hr'g. Tr. at 10:14–10:23. And courts often describe police ordering a car towed to a private lot as an impoundment. *See e.g.*, *United States v. Ashe*, 62 F. App'x 446, 447 (4th Cir. 2003) (describing a search that occurred after a car "was impounded and taken to a private impound lot"); *United States v. McClellan*, 38 F.3d 1217 (6th Cir. 1994) (unpublished table decision) ("The police towed the car to Action Auto Body, the lot where they impound such vehicles."); *Taken Alive v. Litzau*, 551 F.2d 196, 197 (8th Cir. 1977) (noting that a "car was impounded in a privately owned garage"); *United States v. Hellman*, 556 F.2d 442, 443 (9th Cir. 1977) ("The car was then towed to a private impounding facility."); *Eaton v. Whetsel*, 283 F. App'x 599, 600 (10th Cir. 2008) (describing a tow company taking a car "to its private impound lot" after the police's inventory search). Johnson cites no legal authority for the notion the impoundments occur only when police use government-owned tow trucks and take cars onto government property. This Court likewise knows of none.

More, even if the Court accepted Johnson's narrow definition of "impoundment," the policy requires an inventory search if the car is simply "towed" absent one of the listed exceptions. *See* Policy at 14. As already explained, Officer Carll ordered the car towed and no exception applied. Not only did the policy permit an inventory, then, the policy required it.

Next, Johnson contends that the policy's exception for when "a vehicle is towed by a private tow contractor and the owner or operator accompanies the tow" should have applied. As Johnson sees it, had Officer Carll expressly given him a chance to accompany the car, he would

7

have taken it.  Hr'g. Tr. at 37:17–37:19.  In that scenario, the exception Johnson embraces would have applied.  The trouble for Johnson is that nothing in the policy required Officer Carll to offer that option to him.  *See* Policy at 14.  The same is true of other rights individuals must affirmatively invoke yet need not be told of.  *See e.g.*, *City of W. Covina v. Perkins*, 525 U.S. 234, 240–41 (1999) (holding that a city seizing property must inform the owner that "his property has been seized" but "need not take other steps to inform him of his [legal] options"); *United States v. Kubrick*, 444 U.S. 111, 122 (1979) (declining to extend a statute of limitations period based on "a plaintiff's ignorance of his legal rights" to sue); *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (holding that one may consent to a search without knowledge of the right to refuse that search).  Indeed, *Miranda v. Arizona*'s requirement that officers affirmatively advise suspects of their representation rights is the exception, not the rule, in the criminal context.  *See Miranda v. Arizona*, 384 U.S. 436, 49–70 (1966); *see also Schneckloth*, 412 U.S. at 240–42 (explaining that *Miranda* requires "detailed warnings" about Fifth and Sixth Amendment in the interrogation setting to "protect the fairness of the trial itself," unlike other rights, which "have nothing whatever to do" with "ascertainment of truth at a criminal trial").

More, Lieutenant Johnson testified that the department's practice is that whenever "a vehicle is impounded, an individual *may not* accompany the car."  Hr'g. Tr. at 10:10–10:12 (emphasis added).  And Officer Carll also confirmed that even if Johnson had asked to accompany the tow truck, he would have rejected the request.  *Id.* at 32:8–32:14.  The Court credits these claims.

*United States v. Proctor*, 489 F.3d 1348, 1352 (D.C. Cir. 2007), is not to the contrary.  In *Proctor*, police found a pistol during an inventory search of a car following the driver's arrest.  *Id.* at 1350.  The D.C. Circuit found that search violated Metropolitan Police Department

8

("MPD") policy and thus the Fourth Amendment. *Id.* at 1354. The portion of policy at issue required that vehicles "classified as prisoner's property shall be disposed of in any lawful manner in which *the person arrested directs*." *Id.* at 1351, 1354 (emphasis added). Because the officers never gave the arrestee the chance to arrange for the car's removal before impounding it, the Circuit concluded that they contravened their policy. *Id.* at 1354–55. But unlike the MPD policy, Capitol Police guidelines never mention a subject's preference for his car's removal. Recall that the reasonableness of an inventory search keys off its adherence to applicable department policy. *See Opperman*, 428 U.S. at 372. Thus, *Proctor*'s gloss on another agency's policy has little purchase here. A different policy with different language does not bind this Court, nor the U.S. Capitol Police.

### III.

Because Officer Carll followed applicable policy in conducting an inventory search, no Fourth Amendment violation occurred. Defendant's Motion to Suppress Evidence is therefore DENIED.

**SO ORDERED.**

Dated: January 9, 2026                              TREVOR N. McFADDEN, U.S.D.J.